IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Mark Lucijanic,

     Plaintiff,

     v.                        Case No. 2:04-cv-751

City of Columbus,
Division of Police, et al.,

     Defendants.

OPINION AND ORDER

This is an action filed by plaintiff Mark Lucijanic against the City of Columbus ("the City")[1] and Columbus police officers John Ball and Robert Bruce. Plaintiff asserts claims under 42 U.S.C. §1983 for alleged violations of his constitutional rights under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution. Specifically, plaintiff alleges that Officers Ball and Bruce, employees of the City, used excessive force when Officer Ball applied mace while arresting plaintiff, and that the defendants failed to provide him with medical treatment following the use of the mace. Plaintiff also asserts claims for assault, battery and intentional infliction of emotional distress under Ohio law.

This matter is before the court on the defendants' motion for summary judgment. The procedure for granting summary judgment is found in Fed. R. Civ. P. 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and

---

[1]Plaintiff has named the "City of Columbus, Division of Police" as a defendant. Since the Division of Police is not an entity which may be sued, see Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994), the City is the proper defendant in this case.

> admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).

   The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex and Matsushita effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989). The court in Street identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. Id. at 1479. In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Id. (quoting Liberty

2

Lobby, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. Id.  It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita, 475 U.S. at 586).  Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  Id.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

I. Facts of the Case

The evidence in the record reveals that at approximately 3:00 a.m. on August 15, 2003, Officers Ball and Bruce were on patrol on the west side of Columbus, Ohio.  The officers were in a prisoner transportation vehicle.  They were flagged down by three teenage girls standing at the corner of West Broad Street and Central Avenue.  The officers were informed that while one of the girls was using a pay phone, a male driving a white pickup truck stopped, exposed his genitals, and ordered her into his truck.  Two other girls walking in the area observed what was happening and went to the defense of the victim.  A confrontation ensued during which the man attempted to run them down with his truck.  The man then drove away.

The officers obtained a description of the suspect and his truck and his direction of travel.  During the conversation, the girls pointed to a truck driving westbound on Broad Street and identified the driver as being the man who approached them.  The driver waived to the officers.  The officers pursued the truck, and

3

the driver pulled off into a parking lot near the intersection.

Officer Ball approached the vehicle on the driver's side, and Officer Bruce approached on the passenger side. According to the officers, plaintiff, the driver of the vehicle, became visibly upset. Officer Ball requested plaintiff's driver's license. According to Officer Ball, plaintiff thrust the license toward him, resulting in the license falling to the ground. Officer Ball told plaintiff to pick up the license, and when plaintiff exited the vehicle, he was handcuffed and placed under arrest for indecent exposure. Officer Bruce had to assist Officer Ball in handcuffing plaintiff. The officers indicated that at this point, plaintiff was upset and using foul language. Plaintiff was placed in the back of the officers' vehicle, and a seatbelt was fastened around his waist.

According to the officers, plaintiff became increasingly belligerent, calling the girls "bitches" and "whores." Plaintiff started kicking, stomping his feet, and throwing his legs about. He began pushing against the seatbelt, visibly loosening the seatbelt. The same seatbelt had previously been broken shortly before the time of plaintiff's arrest. Plaintiff attempted to break the handcuffs, stating that the seatbelt and handcuffs would not restrain him. Officer Ball became concerned that plaintiff would break the seatbelt. He told plaintiff that he would use mace if plaintiff did not settle down. Officer Ball sprayed mace from the side door of the van, but plaintiff turned his head away. Officer Ball then proceeded to the back door of the van and sprayed the mace in plaintiff's face. Plaintiff's physical aggression ceased for a short period of time. Officer Bruce was standing near

4

the vehicle at the time but did not use mace on the plaintiff.

Sergeant Joseph Horton and Sergeant Strasbaugh arrived at the scene, and initiated an investigation of the use of mace.  At that point plaintiff began to display turbulent behavior.  According to Sergeant Horton, plaintiff clenched his fists, straining against the handcuffs, and brought his feet above his waist line several times, displaying an aggressive posture, cursing and growling. Sergeant Horton observed that plaintiff was not effectively responding to his questions and terminated the interview.  Officers Ball and Bruce then transported plaintiff to the Franklin County Jail.

Plaintiff acknowledged that he exposed himself, and he does not contest that the officers had probable cause to arrest him. However, his version of the arrest differs in some respects from that of the officers.  Plaintiff denied thrusting his driver's license at Officer Ball.  He claimed that Officer Ball called him a "pervert."  He admitted that he yelled at the officers, but he denied resisting arrest in any way or struggling against the restraints in the van.  Plaintiff claimed that he did nothing which would warrant the use of mace by Officer Ball.

II. Eighth Amendment Claim

Plaintiff alleged in his complaint that the defendants violated the Eighth Amendment by macing him and by failing to provide him with treatment for the mace.  The defendants have moved for summary judgment on this claim, arguing that the Eighth Amendment does not provide a basis for relief in this case.  The defendants are correct.  The Eighth Amendment does not apply to pretrial detainees.  Watkins v. City of Battle Creek, 273 F.3d 682,

685 (6th Cir. 2001).  Plaintiff's claim that the officers used excessive force during his arrest by employing mace is governed by the Fourth Amendment and its "reasonableness" standard.  <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989).  Plaintiff's claim that he was denied adequate medical care falls within the scope of the Due Process Clause of the Fourteenth Amendment.  <u>Watkins</u>, 273 F.3d at 685-86.  Defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim.

## III. Fourteenth Amendment Claim - Excessive Force

Defendants also move for summary judgment on plaintiff's Fourteenth Amendment claim to the extent that plaintiff invokes that provision as a basis for his excessive use of force claim. The Supreme Court has held that claims involving the excessive use of force during arrest are to be analyzed under the "reasonableness" standard of the Fourth Amendment, rather than under a "substantive due process" approach.  <u>Graham</u>, 490 U.S. at 395.  Defendants' motion for summary judgment on plaintiff's Fourteenth Amendment claim, insofar as that claim asserts the excessive use of force during arrest, is granted.

## IV. §1983 Claims Against Defendants Ball and Bruce

Plaintiff asserts claims against Officers Ball and Bruce for the alleged violation of his Fourth Amendment rights due to the use of excessive force during his arrest and the alleged failure to provide him with treatment following the use of mace.  The officers have moved for summary judgment on these claims, and further argue that they are entitled to qualified immunity.

Under the qualified immunity doctrine outlined in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), government officials are immune

6

from liability for civil rights damages insofar as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. First, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a violation of a right occurred. <u>Feathers v. Aey</u>, 319 F.3d 843, 848 (6th Cir. 2003). Second, it must be determined whether the violation involved a clearly established right of which a reasonable person would have known. <u>Id</u>. Third, the court must determine whether what the official allegedly did was objectively unreasonable in light of the clearly established right. <u>Id</u>.

To find that a right is clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Russo v. City of Cincinnati</u>, 953 F.2d 1036, 1042 (6th Cir. 1992). "Although it need not be the case that 'the very action in question has been previously held unlawful, ... in the light of pre-existing law the unlawfulness must be apparent.'" <u>Id</u>. (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1992)). A right can be clearly established even if there is no case involving fundamentally or materially similar facts. <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002).

The question of whether a defendant is entitled to qualified immunity is one of law for the court. <u>Dominque v. Telb</u>, 831 F.2d 673, 677 (6th Cir. 1987). "However, where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." <u>Pouillon v. City of Owosso</u>, 206 F.3d 711, 715 (6th Cir. 2000).

Here, plaintiff's version of what happened after he was

handcuffed and placed in the police van differs from that of the officers. In conducting a qualified immunity analysis, this court must review the evidence in a light most favorable to the plaintiff, taking all inferences in his favor. Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900 (6th Cir. 2004). The use of mace on an arrestee who is handcuffed may constitute the excessive use of force in violation of the arrestee's Fourth Amendment rights. See id. at 903 (officer who continued to spray mace on mentally retarded arrestee who was handcuffed and hobbled not entitled to qualified immunity); Adams v. Metiva, 31 F.3d 375 (6th Cir. 1994)(continued use of mace after plaintiff already blinded and incapacitated constituted excessive force). The right to be free from the excessive use of force is a Fourth Amendment right which was clearly established at the time of plaintiff's arrest. Champion, 380 F.3d at 902-03.

If the officers' version of the incident is accepted by a jury, the jurors could reasonably conclude that the use of mace was justified under the circumstances. See Greene v. Barber, 310 F.3d 889, 898-99 (6th Cir. 2002)(upholding grant of qualified immunity where officer used mace on person arrested for minor offense who was resisting arrest both physically and in a verbally aggressive manner). However, if plaintiff's version is accepted, the jury could reasonably conclude that the force used was excessive. Since qualified immunity in this case depends on which version is accepted by the jury, genuine issues of fact preclude summary judgment on plaintiff's Fourth Amendment claim against the officers.

Defendant Bruce argues that he is entitled to summary judgment

8

on the excessive force claim because he did not use mace against the plaintiff.  However, the Sixth Circuit has held that for purposes of liability under §1983, a police officer, even if he is not a supervisor, has a duty to try to stop another officer who summarily punishes a person in the first officer's presence. Bruner v. Dunaway, 684 F.2d 422, 426 (6th Cir. 1982).  See also Grooms v. Dockter, 76 F.3d 378 (table), 1996 WL 26917 (6th Cir. Jan. 23, 1996); Gibson v. City of Clarksville, 860 F.Supp. 450, 463-64 (M.D.Tenn. 1993).  Plaintiff testified in his deposition that Officer Bruce was present when Officer Ball used the mace.  Genuine issues of fact exist as to whether the force used by Officer Ball was excessive, whether Officer Bruce was aware of any use of excessive force, and whether he was in a position to intervene, yet failed to do so.  Officer Bruce is not entitled to summary judgment on this claim.

Defendants Ball and Bruce have also moved for summary judgment on plaintiff's failure to provide medical treatment claim.  To demonstrate a violation of this right under the Due Process Clause of the Fourteenth Amendment, plaintiff must satisfy two tests, one objective and one subjective.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires plaintiff to allege that the medical need at issue is sufficiently serious-that he was detained "under conditions posing a substantial risk of serious harm." Napier v. Madison County, 238 F.3d 739, 742 (6th Cir. 2001).  In Napier, the Sixth Circuit held that a plaintiff who complains that a delay in medical treatment violated his constitutional rights must present "verifying medical evidence" to establish the

detrimental effect of the delay.  238 F.3d at 742-43.

Plaintiff must also show that the officers subjectively had "a sufficiently culpable state of mind in denying medical care." Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004)(citing Farmer, 511 U.S. at 834).  In other words, plaintiff must show that the defendants were deliberately indifferent to his medical needs.  Garretson v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir. 2005).  Mere negligence does not rise to the level of deliberate indifference.  Comstock, 273 F.3d at 703.  Deliberate indifference requires that the officers knew of and disregarded a substantial risk of serious harm to plaintiff's health and safety. Garretson, 390 F.3d at 797.  It is not enough that there was a danger of which an officer should objectively have been aware. Watkins v. City of Battle Creek, 273 F.3d 682, 686 (6th Cir. 2001). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  If the officers failed to act in the face of an obvious risk of which they should have know but did not, then they did not violate the Fourteenth Amendment.  Garretson, 390 F.3d at 797.

In this case, plaintiff has presented no medical evidence that delay in giving him treatment at the scene of the arrest posed a substantial risk of serious harm.  He acknowledged that the officers left the doors of the vehicle open after he had been maced to allow the air to circulate.[2]  Although plaintiff argues that

_____

[2]There is conflicting testimony as to whether plaintiff received medical attention at the scene of arrest.  Officer Bruce testified in his deposition that a Medic unit came to the scene and that plaintiff was given a wet rag to place on his eyes.  Plaintiff denied receiving any medical treatment at the scene.  For purposes of this motion, the court will assume that no squad responded to the

this was not sufficient to allow the mace to dissipate, the officers were able to transport plaintiff to the County Jail in the vehicle. Plaintiff did not request medical treatment at the jail. He waited three days following his arrest before seeking treatment at a hospital emergency room. Plaintiff also testified in his deposition that he was not claiming that Officers Ball and Bruce denied him medical treatment. He stated that he asked Sergeant Horton for medical treatment, not Officers Ball and Bruce. Plaintiff's Dep., p. 237.

Plaintiff has failed to produce evidence that Officers Ball and Bruce acted with deliberate indifference, that is, that they knew of and disregarded a substantial risk of serious harm to plaintiff's health. According to plaintiff, Officers Ball and Bruce were not in the vicinity when he requested medical treatment from Sergeant Horton. No evidence has been presented that the officers, as laypersons, not physicians, would easily recognize the necessity for a doctor's attention under the circumstances. <u>Vaughn v. City of Lebanon</u>, 18 Fed.Appx. 252, 273 (6th Cir. Aug. 16, 2001). There is no evidence that the failure to immediately treat for mace with a chemical wash poses a substantial risk of serious harm to persons in general or plaintiff in particular. Even assuming that to be the case, the evidence does not show that Officers Ball and Bruce knew that a substantial risk of serious harm existed if plaintiff did not receive treatment, yet disregarded that risk. Officers Ball and Bruce are entitled to summary judgment on the Fourteenth Amendment claim of failure to provide medical treatment.

<u>V. State Law Claims Against Defendants Ball and Bruce</u>

---

scene.

Defendants Ball and Bruce have moved for summary judgment on plaintiff's state law claims of assault, battery and intentional infliction of emotional distress.

The tort of assault is the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact.  The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching.  The actor must also know with substantial certainty that his act would bring about harmful or offensive contact.  <u>Smith v. John Deere Co.</u>, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148 (1993).

The tort of battery involves the actual harmful and/or offensive touching or physical contact.  <u>Love v. City of Port Clinton</u>, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988).  A person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results. <u>Hunter v. Shenango Furnace Co.</u>, 38 Ohio St.3d 235, 237, 527 N.E.2d 871 (1988).  To make an actor liable for battery, the harmful bodily contact must be caused by an act done by the person whose liability is in question.  <u>Id</u>. (citing Restatement (Second) of Torts §14 (1965)).  Further, in order to be liable for battery, the defendant must have done some positive and affirmative act.  <u>Id</u>.

A police officer making an arrest is justified in using sufficient force to subdue the suspect, even though not acting in self defense, and is not liable for assault and battery unless he uses more force than is necessary to make the arrest.  <u>Alley v. Bettencourt</u>, 134 Ohio App.3d 303, 313, 730 N.E.2d 1067 (1999); <u>Skinner v. Brooks</u>, 74 Ohio App. 288, 291, 58 N.E.2d 697 (1944).

The genuine issues of fact which preclude summary judgment for defendant Ball on the §1983 excessive use of force claim also preclude summary judgment on plaintiff's assault and battery claims under Ohio law.  The evidence in the record presents an issue of fact as to whether the force used during plaintiff's arrest was excessive, or whether the force used was justified and therefore privileged.  See Brooks, 74 Ohio App. at 292 (where record presented issues of fact as to whether officer was justified in using mace and whether the manner of use was within limits of force reasonably necessary to restore peace and effect arrest, defendant not entitled to judgment).  Defendant Ball is not entitled to summary judgment on the assault and battery claims.

However, there is no evidence that defendant Bruce used excessive force during the course of the arrest.  He testified that did not use mace against the plaintiff, and plaintiff agreed with this in his deposition.  Officer Bruce testified that he was in the process of preparing paperwork approximately ten to twelve feet away from the vehicle when Officer Ball first used the mace.  He then moved beside Officer Ball and observed Officer Ball use mace a second time.  However, there is no evidence that he aided or encouraged Officer Ball in using the mace.  The torts of assault and battery are intentional torts, and no evidence has been presented from which a trier of fact could reasonably conclude that defendant Bruce intentionally assaulted or physically touched plaintiff in a harmful way.  Defendant Bruce is entitled to summary judgment on the state law assault and battery claims.

Defendants Ball and Bruce have also moved for summary judgment on plaintiff's claim of intentional infliction of emotional

distress. In order to establish a claim for the intentional or reckless infliction of severe emotional distress, plaintiff must show: (1) that the defendant intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff; (2) that the defendant's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it must be considered as utterly intolerable in a civilized community; (3) that the defendant's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it. Yeager v. Local Union 20, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983). The term "serious" refers to an emotional injury which is both severe and debilitating, such that a reasonable person would be unable to cope adequately with the mental distress engendered by the circumstances. Paugh v. Hanks, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983).

Defendants note that plaintiff has never sought psychiatric counseling, and that the only mental distress he has identified stems from problems sleeping because of pain in his eyes and going to doctors and court. Defendants' argument in that regard might have weight if plaintiff had not sustained physical injury. As the Ohio Supreme Court noted in Binns v. Fredendall, 32 Ohio St.3d 244, 245, 513 N.E.2d 278 (1987), "Ohio law has traditionally permitted recovery for negligently inflicted emotional and psychiatric injuries accompanied by contemporaneous physical injury." Thus, Negligently inflicted emotional and psychiatric injury sustained by a plaintiff who also suffers contemporaneous physical injury need

14

not be severe and debilitating to be compensable.  Id.  The same reasoning would apply here to the intentional infliction of emotional distress claim asserted by plaintiff.

The record contains sufficient evidence to raise a genuine issue of material fact as to whether defendant Ball intentionally inflicted serious emotional distress on plaintiff by using mace. Defendant Ball is not entitled to summary judgment on this claim. However, the evidence is insufficient to create a genuine issue of fact on the emotional distress claim as asserted against defendant Bruce.  As noted above, there is no evidence that defendant Bruce used mace or encouraged or aided in any way the use of mace by defendant Ball, or that he otherwise used excessive force or caused any physical injury to plaintiff during the arrest.  There is no evidence from which a jury could reasonably infer that Officer Bruce, through improper and outrageous conduct, intentionally caused plaintiff to suffer serious emotional distress.  Defendant Bruce is entitled to summary judgment on this claim.

Defendants Ball and Bruce also argue that they are entitled to the immunity defense provided in Ohio Rev. Code §2744.03(A)(6). Under that section, employees of a political subdivision are immune from liability unless: "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code."  Ohio Rev. Code §2744.03(A)(6)(a) through (c).

In this case, the first and third exceptions do not apply.

15

Since the evidence indicates that defendants Ball and Bruce were acting within the scope of their employment performing a governmental function, they are immune unless evidence is presented that they acted outside the scope of their employment or "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code §2744.03(A)(6)(b).

"Malicious purpose" is the "willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through ... unlawful or unjustified" conduct. Schoenfield v. Navarre, 164 Ohio App.3d 571, 577, 843 N.E.2d 234 (2005)(quoting Cook v. Hubbard Exempted Village Bd. of Educ., 116 Ohio App.3d 564, 569, 688 N.E.2d 1058 (1996)). "Bad faith" is more than mere bad judgment or negligence. Id. It connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Jackson v. McDonald, 144 Ohio App.3d 301, 309, 760 N.E.2d 24 (2001). One acts recklessly

> if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Thompson v. McNeill, 53 Ohio St.3d 102, 104-05, 559 N.E.2d 705 (1990). "Wanton" conduct is the complete failure to exercise any care whatsoever. Fabrey v. McDonald Village Police Dept., 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994).

There is no evidence from which a jury could reasonably find that defendant Bruce acted with malicious purpose, in bad faith, or in a wanton or reckless manner, and he is entitled to the

16

protection of the qualified immunity defense in §2744.03(A)(6). However, the evidence is sufficient to raise genuine issues of fact as to whether defendant Ball acted with malicious purpose, in bad faith, or in a wanton or reckless manner in using the mace on plaintiff. These genuine issues of fact preclude summary judgment in favor of defendant Ball on plaintiff's state law claims.

VI. §1983 Claims Against City

Plaintiff has asserted §1983 claims against the City based on the alleged use of excessive force and the alleged failure to provide him with medical treatment. Plaintiff alleges that the officers were inadequately trained and supervised, and that the City failed to discipline them.

A municipality may only be held liable for civil rights violations if the municipality itself causes the constitutional deprivation. Monell v. Department of Social Servs., 436 U.S. 658 (1978). The doctrine of respondeat superior liability is inapplicable in §1983 actions. Id. at 691-95. a municipality is liable for the acts of its employees only where the violation of the plaintiff's constitutional rights stems from a governmental policy or custom. City of Canton, Ohio v. Harris, 489 U.S. 378 (1989). The plaintiff must establish that the municipal action was taken with "deliberate indifference" to its known or obvious consequences. Id. at 388.

To sustain liability, plaintiff must first show that his constitutional rights were in fact violated by the municipal employees. Ewolski v. City of Brunswick, 287 F.3d 492, 516 (6th Cir. 2002). Plaintiff must then show that the city's policy or custom was the moving force of the constitutional violation. Polk

County v. Dodson, 454 U.S. 312, 326 (1981).  See also Board of County Commrs. of Bryan County, Okla. v. Brown, 520 U.S. 397, 404 (1997)(plaintiff must show that municipal action was taken with requisite degree of culpability and must demonstrate a direct causal link between the municipal action and a deprivation of federal rights); Garner v. Memphis Police Dept., 8 F.3d 358 (6th Cir. 1993)(plaintiff must identify policy at issue, connect the policy to the governmental body, and show that injuries were incurred because of the execution of the policy).  "A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411.

A single decision by a decision maker with final authority in the relevant area may constitute a "policy" attributable to the municipality.  Pembaur v. City of Cincinnati, 475 U.S. 469 (1986). However, the municipality is liable for an official's unconstitutional action only when the official is the one who has the final authority to establish municipal policy with respect to the action ordered.  Id. at 481.  Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials.  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).  Here, there is no evidence that any of the officers involved in plaintiff's arrest were policy makers for the City.

Plaintiff alleges that the City should be held liable due to

18

a policy of inadequate training.  The City has presented evidence through the affidavits of Officers Ball and Bruce and Sergeant Horton that they completed a twenty-five week course at the Police Academy, and were assigned to work with an experienced field training officer prior to obtaining their initial assignments. These officers also receive regular in-service training on police issues including arrest, search and seizure, and use of force. Officers Ball and Bruce also stated in their affidavits that they were currently trained with respect to the Columbus Division of Police's policies, including the Use of Force Policy.

Plaintiff has produced no evidence to show that these officers were inadequately trained.  Mere allegations that a particular officer was improperly trained or that a particular injury could have been avoided with better training are insufficient to prove liability on the part of the City. Sova v. City of Mount Pleasant, 142 F.3d 898, 904 (6th Cir. 1998); Walter v. Norris, 917 F.2d 1449, 1456 (6th Cir. 1990).

Plaintiff also alleges that the City should be held accountable due to the failure to adequately supervise or discipline the officers.  The failure to investigate and discipline may give rise to §1983 supervisory liability. Walter, 917 F.2d at 1457.  However, this liability arises where no serious investigation is conducted. See Marchese v. Lucas, 758 F.2d 181, 188 (6th Cir. 1985).  A governmental entity is subject to liability for failing to act on complaints of misconduct by police officers only if it had a policy or custom of failing to act upon prior similar complaints of unconstitutional conduct. Andrews v. Fowler, 98 F.2d 1069, 1074-75 (8th Cir. 1996); Brown v. Shaner, 172 F.3d

19

927, 931 (6th Cir. 1999)(city not liable where plaintiffs produced no evidence that city, on present occasion or in the past, failed to investigate and discipline the use of excessive force by its police personnel where such discipline was justified).  Plaintiff must also establish that the failure to investigate misconduct or to discipline in the past was the "moving force" behind the plaintiff's injury.  <u>Searcy v. City of Dayton</u>, 38 F.3d 282, 287 (6th Cir. 1994).

In this case, an investigation was conducted on plaintiff's complaint.  No discipline has been imposed as a result of that complaint.  However, the fact that the investigators apparently chose to believe the officers' version of the incident does not establish that the City failed to conduct an adequate investigation or failed to discipline the officers where such discipline was warranted.  The alleged use of excessive force and ensuing investigation in the instant case are insufficient to establish the existence of a municipal policy, custom or practice condoning excessive force.  Such a policy must be shown by a clear and persistent pattern.  <u>Doe</u>, 103 F.3d at 508.  Attempting to infer a city-wide policy based solely on one instance of potential misconduct "taken to its logical end, would result in the collapsing of the municipal liability standard into a simple <u>respondeat superior</u> standard."  <u>Thomas v. City of Chattanooga</u>, 398 F.3d 426, 432-33 (6th Cir. 2005) (without showing more than officer's potentially excessive use of force in this case, plaintiff cannot survive summary judgment).

To show that the City had a policy of inadequate investigation, plaintiff must show not only that the investigation

20

in this case was inadequate, but that the flaws in this particular
investigation were representative of (1) a clear and persistent
pattern of illegal activity, (2) which the Division knew or should
have known about, (3) yet remained deliberately indifferent about,
and (4) that the Division's custom was the cause of the alleged
excessive use of force in this case.  Id. at 433.

Plaintiff has produced evidence that Officer Ball has been
disciplined with respect to failure to radio in his location during
a vehicle pursuit, and that Officer Bruce was disciplined for his
hat being stolen.  However, these violations are not similar to the
alleged violations at issue in this case, and are not relevant.
Such violations would only be relevant if they involved the
excessive use of force similar to that involved in plaintiff's
case.  See Carter v. Morris, 164 F.3d 215, 219 (4th Cir. 1999);
Andrews v. Fowler, 98 F.3d 1069, 1074-75 (8th Cir. 1996).  The same
can be said about the other complaints which plaintiff alleges have
been filed by citizens against Officer Ball.  Since the actual
complaints have not been filed with the record in response to the
motion for summary judgment, the nature of these complaints is
unknown.

Further, it is not sufficient for a plaintiff to simply
introduce evidence that citizen complaints had been filed against
these officers in the past.  Mettler v. Whitledge, 165 F.3d 1197,
1205 (8th Cir. 1999)(noting that "the mere existence of previous
citizens' complaints does not suffice to show a municipal custom of
permitting or encouraging excessive force.");  Rogers v. City of
Little Rock, Ark., 152 F.3d 790, 799 (8th Cir. 1998)(finding that
plaintiff failed to show that a policy of believing the officer's

word over the complainant's in the absence of other evidence led officers to believe that they could violate citizens' constitutional rights without fear of punishment). Rather, some evidence is needed to show that the complaints had merit, and that the investigators of alleged police misconduct shirked their duties.

Plaintiff has produced no evidence regarding the factual background of the complaints to which he refers, or evidence that the investigations into those complaints were inadequate. Mettler, 165 F.3d at 1205. See also Thomas, 398 F.3d at 430-31)(rejecting expert's testimony as support for plaintiff's excessive use of force claim where expert did nothing to inform court as to whether most of the complaints were serious or frivolous, and failed to explain how mere number of complaints, evaluated in a vacuum, could lead to a conclusion about department's policies); Brown, 172 F.3d at 931 (upholding award of summary judgment to city where plaintiff "produced no evidence indicating that the City either on this occasion or in the past failed to investigate and discipline the use of excessive force by its police personnel where such discipline was justified.")(Emphasis supplied.) Plaintiff has also failed to show that the failure to investigate misconduct or to discipline was the "moving force" behind his injury. Searcy, 38 F.3d at 287. Plaintiff has produced no evidence that any previous investigations into alleged misconduct by the officers in this case or by other officers were inadequate, and that this policy of inadequate investigation or supervision was the moving force in the officers' actions toward plaintiff. Mettler, 165 F.3d at 1205.

Plaintiff states that he intends to introduce such evidence at

22

trial.  However, denial of a motion for summary judgment may not be based on the party's desire or hope to present evidence at trial. See Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 39 (1st Cir. 1993)(mere promise to produce admissible evidence at trial does not suffice to thwart summary judgment); Street, 886 F.2d at 1476 (nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'")(quoting Liberty Lobby, 477 U.S. at 257); Parker v. Federal Nat'l Mortgage Ass'n, 741 F.2d 975, 980 (7th Cir. 1984)(in summary judgment proceeding, court has responsibility to assess evidence in advance of trial rather than letting every case proceed to trial on the mere hope that trial would produce other evidence); Neely v. St. Paul Fire & Marine Ins. Co., 584 F.2d 341 (9th Cir. 1978)(denial of summary judgment not warranted based on hope of party opposing motion that he can produce evidence at trial).

Plaintiff has failed to produce evidence sufficient to create a genuine issue of fact on whether the City has a policy, custom or practice of deliberate indifference to the excessive use of force, and the City is entitled to summary judgment on plaintiff's excessive use of force claim.

To hold the City liable on his claim that his medical needs were not met, plaintiff must show that his constitutional rights were in fact violated by the municipal employees.  Ewolski, 287 F.3d at 516.  In addition, plaintiff must show: (1) a clear and persistent pattern of mishandled medical emergencies for pretrial detainees; (2) notice, or constructive notice of such pattern to

the City; (3) tacit approval of the deliberate indifference and failure to act amounting to an official policy of inaction; and (4) that the custom or policy of inaction was the moving force or direct causal link behind the constitutional injury. <u>Garretson</u>, 407 F.3d at 796; <u>Doe v. Claiborne County</u>, 103 F.3d 495, 508 (6th Cir. 1996).

In this case, there was testimony that the policy for treating detainees after the use of mace was to give them access to "copious amounts of air." Ball Dep., p. 52. Officer Ball stated that the doors to the vehicle where plaintiff was seated were left open to permit air to circulate. There is no evidence that this was insufficient to comply with the official policy at the time. Plaintiff has also produced no evidence that a policy which did not require the immediate use of a chemical wash at the scene of the arrest rather than waiting for the transport of the detainee to the county jail, where a chemical wash was available, was likely to create "conditions posing a substantial risk of serious harm." <u>Napier</u>, 238 F.3d at 742-43 (plaintiff who complains that a delay in medical treatment violated his constitutional rights must present "verifying medical evidence" to establish the detrimental effect of the delay). Plaintiff states that he was not given any treatment when he arrived at the jail. However, he acknowledges that he did not request medical treatment at the jail. There is also no evidence that the personnel at the Franklin County Jail are municipal employees.

Plaintiff has not submitted evidence sufficient to show a violation of his due process rights by municipal employees. Even assuming that there was a violation of city policy involving

treatment for mace, plaintiff has not shown that any of the officers on the scene were deliberately indifferent to his medical needs, that is, that the officers knew of and disregarded a substantial risk of serious harm to plaintiff's health.  Plaintiff has also presented no evidence that there existed a clear and persistent pattern of mishandled medical emergencies for pretrial detainees of which the City had notice, that the City was deliberately indifferent to the medical needs of pretrial detainees or to the failure of officers to comply with official policy, or that any custom or policy of inaction was the moving force or direct causal link behind plaintiff's injury.  <u>Garretson</u>, 407 F.3d at 796.

Plaintiff has pointed to no evidence sufficient to raise a genuine issue of fact in regard to the City's liability for the alleged violations of his due process rights, and the City is entitled to summary judgment on this claim.

<u>VII. State Law Claims Against City</u>

The City moves for summary judgment on plaintiff's state law claims on the basis of political subdivision immunity.  Ohio Revised Code §2744.02(A)(1) confers broad immunity on political subdivisions, except as provided in Ohio Revised Code §2744.02(B). Section 2744.02(A)(1) provides that

> a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

A "political subdivision" includes a municipal corporation.  Ohio Rev. Code §2744.01(F).  The term "governmental function" includes

25

the provision or nonprovision of police services or protection. Ohio Rev. Code §2744.01(C)(2)(a).

Ohio courts have held that political subdivisions are entitled to immunity under §2744.02 for the intentional torts committed by their employees. See, e.g., Wilson v. Stark Cty. Dept. of Human Serv., 70 Ohio St.3d 450, 452, 639 N.E.2d 105 (1994)(holding that statute conferred immunity for intentional torts of fraud and intentional infliction of emotional distress); Ramey v. Mudd, 154 Ohio App.3d 582, 587-88, 798 N.E.2d 57 (2003)(finding immunity for intentional torts, including assault and battery); Lee v. City of Cleveland, 151 Ohio App.3d 581, 587, 784 N.E.2d 1218 (2003)(city immune on claims that officers used excessive force in making arrest).  Further, unless one of the exceptions in §2744.02(B) applies, a political subdivision retains its cloak of immunity stemming from an employee's negligent or reckless acts. Wilson, 70 Ohio St.3d at 452.

Determining whether a political subdivision is immune from tort liability pursuant to Chapter 2744 involves a three-tiered analysis. Colbert v. City of Cleveland, 99 Ohio St.3d 215, 216, 790 N.E.2d 781 (2003).  The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental or proprietary function.  Id. Here, the officers were engaged in providing police services, defined by statute as a governmental function.

The second tier of the analysis requires a court  to determine whether any of the five exceptions to immunity listed in Ohio Rev. Code §2744.02(B) apply.  These exceptions concern certain negligent acts by political subdivision employees in the operation of motor

26

vehicles or the performance of proprietary functions, roadway safety, and other Ohio Revised Code provisions. None of the exceptions apply in this case, and therefore, it is unnecessary to proceed to the third tier of the analysis, which is determining the applicability of any of the defenses in Ohio Rev. Code §2744.03.

No exception to immunity applies to plaintiff's claims that the officers committed assault and battery due to the use of excessive force or intentionally inflicted serious emotional distress on the plaintiff. The City is entitled to statutory immunity under §2744.02 on these claims.

VIII. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is granted in part and denied in part. The motion of the City of Columbus for summary judgment is granted. The motion for summary judgment of defendant Ball is granted in regard to the §1983 Eighth and Fourteenth Amendment claims and denied as to the §1983 Fourth Amendment excessive force claim and the state law claims. The motion for summary judgment of defendant Bruce is denied as to the §1983 excessive force claim, and granted as to the other §1983 and state law claims.


Date: April 13, 2006          _____s\James L. Graham_____
                              James L. Graham
                              United States District Judge